## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

PIA GORDON,                          )
                                     )
            Plaintiff,               )
                                     )
v.                                   )      Civil Action No. 3:23-cv-739-HEH
                                     )
ROBERT S. DAY, *et al.*,             )
                                     )
            Defendants.              )

### MEMORANDUM OPINION
### (Dismissing Action Without Prejudice)

THIS MATTER is before the Court on *pro se* Plaintiff Pia Gordon's ("Plaintiff")

Revised Complaint (ECF No. 7), filed on March 20, 2024. For the reasons set forth

below, the Court will dismiss Plaintiff's Revised Complaint pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii) and Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

The Court notes that Plaintiff's Revised Complaint is difficult to understand due to

an absence of clearly and chronologically presented facts.[1] The following is the Court's

best attempt to construct a coherent narrative from Plaintiff's allegations.

Plaintiff received a target letter addressed to "Pia Lawson" from the United States

Attorney's Office for the Eastern District of Virginia signed by Defendants Assistant

United States Attorney Robert S. Day ("Day") and United States Attorney Jessica D.

---

[1] Plaintiff provides sparse details about her receipt of a target letter, her actions thereafter, and
Defendant's specific actions that created her cause of action.

Aber ("Aber") (collectively, "Defendants"). (*See* Attach. 1, ECF No. 7–1.) The target letter was dated June 29, 2023, and notified Plaintiff that she was under investigation for bank fraud, conspiracy, and aggravated identity theft. (*Id.*) Day offered Plaintiff a plea agreement on or about August 15, 2023. (Revised Compl. ¶ 5.) Plaintiff was represented by Assistant Federal Public Defender Laura Koenig ("Koenig") during plea agreement negotiations.[2] (*Id.*) Plaintiff asserts that her "[a]ssigned attorney," presumably Koenig, "was trying to push the plea agreement and not advising [] [P]laintiff of her rights." (*Id.* ¶ 32.) Plaintiff mailed "an offer to settle the matter" to Clerk of Court, Fernando Galindo, on October 24, 2023. (*Id.* ¶ 6.)

On November 3, 2023, Plaintiff filed her Motion to Proceed *In Forma Pauperis* (the "IFP Motion," ECF No. 1) with her original complaint attached (Revised Compl. ¶ 10; *see* Compl., ECF No. 6). Plaintiff listed Day, and "BB&T now known as Truist Bank" as Defendants. (Compl. at 3.) On February 22, 2024, the Court granted Plaintiff's IFP Motion but dismissed Plaintiff's Complaint without prejudice for failing to state a claim upon which relief can be granted. (Mem. Order at 1–2, ECF No. 5.) The Court granted Plaintiff leave to amend her Complaint within thirty (30) days. (*Id.* at 6.) Plaintiff filed her Revised Complaint on March 20, 2024. The Revised Complaint removes BB&T as a defendant from the Complaint and adds Aber.

---

[2] On November 3, 2023, Plaintiff removed Koenig as her counsel because Koenig's "level of incompetence as it pertains to the law became evident" to Plaintiff. (Revised Compl. ¶¶ 7–8.) It is the Court's understanding that the Honorable Mark R. Colombell, United States Magistrate Judge, granted Plaintiff's request to dismiss Koenig after a hearing on the matter.

## II. STANDARD OF REVIEW

The statute governing IFP filings provides that "the court shall dismiss the case at any time if the court determines that the action or appeal is frivolous or . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(i)–(ii); *see also Michau v. Charleston Cnty.*, 434 F.3d 725, 728 (4th Cir. 2006) ("28 U.S.C.[] § 1915(e) . . . governs IFP filings . . . ."). Section 1915(e)(2) "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)), *abrg'd on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020). Therefore, the Court must screen all IFP complaints to ensure judicial economy.

When assessing whether an IFP complaint fails to state a claim on which relief may be granted, courts conduct a similar analysis to that used when considering a motion to dismiss pursuant to Rule 12(b)(6). *See De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). For a complaint to be sufficient under Rule 12(b)(6), a plaintiff must assert "[f]actual allegations" that are "enough to raise a right to relief above the speculative level" to one that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). When considering an IFP filing, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to

3

the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Additionally, the Court acknowledges that *pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). The Court, however, need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* Nor does the requirement of liberal construction excuse a clear failure in the pleading to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). As the Fourth Circuit explained in *Beaudett v. City of Hampton*, while "[*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

## III.   DISCUSSION

Plaintiff's Revised Complaint states that this Court has jurisdiction under 28 U.S.C. § 1331 because she brings claims under 42 U.S.C. §§ 1983, 1988, the *de facto* officer doctrine, and the Constitution. (Revised Compl. at 1, 4–7.) Plaintiff alleges violations of her First, Fourth, Fifth, Sixth, Seventh, and Tenth Amendment rights. (*Id.* ¶¶ 16–36.) Plaintiff seeks monetary damages and multiple forms of equitable relief, including "legal recognition" of her name as "Pia Gordon" and "exoneration from any associations with the name 'Pia Gordon-Lawson.'" (*Id.* ¶¶ 37–55.) In keeping with the latitude given to *pro se* litigants, the Court will interpret the Revised Complaint as

4

broadly as possible without taking on the role of advocate.  Thus, the Court will interpret the Revised Complaint to bring claims under § 1983, claims asserting constitutional violations, and a claim under the *de facto* officer doctrine.

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983).  However, § 1983 only provides a cause of action for violations committed by state actors; it does not apply to the actions of federal officials. *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019).

Plaintiff's Revised Complaint fails to state a plausible claim for relief under 42 U.S.C. § 1983.  Here, Plaintiff alleges that Defendants violated various Constitutional rights. (Revised Compl. ¶¶ 16–36.)  Defendants, a United States Attorney and an Assistant United States Attorney, are federal officials.  Thus, § 1983 is inapplicable. Accordingly, Plaintiff's § 1983 claim fails as a matter of law.[3]

Although a § 1983 action is unavailable to Plaintiff, Plaintiff's Revised Complaint could be construed to assert a cause of action directly under the First, Fourth, Fifth, Sixth, Seventh, and Tenth Amendments.  The doctrine announced by the Supreme Court in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), allows citizens to seek monetary damages from federal officials for civil rights

---

[3] Because Plaintiff's § 1983 claim fails, she cannot recover fees and costs under 42 U.S.C. § 1988.

violations. *Bivens*, 403 U.S. at 397. *Bivens* creates a right of action against individual federal officials in their personal capacities for violations of clearly established constitutional rights. *Ciralsky v. C.I.A.*, No. 1:10-cv-911, 2010 WL 4724279, at *4 (E.D. Va. Nov. 15, 2010), *aff'd sub nom. Ciralsky v. Tenet*, 459 F. App'x 262 (4th Cir. 2011). The Supreme Court has extended the *Bivens* remedy only to certain types of cases, including Fifth Amendment employment discrimination due process claims and Eighth Amendment challenges to prison official conduct. *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). The Fourth Circuit has been unwilling to expand the reach of *Bivens*. *See, e.g., Earle v. Shreves*, 990 F.3d 774, 781 (4th Cir. 2021) (declining to expand the *Bivens* remedy to include a First Amendment claim); *Holly v. Scott*, 434 F.3d 287, 290 (4th Cir. 2006) ("The [Supreme] Court has therefore on multiple occasions declined to extend *Bivens* because Congress is in a better position to decide whether or not the public interest would be served by the creation of new substantive legal liability" (quoting *Schweike v. Chilicky*, 487 U.S. 412, 426–27 (2006) (internal quotations omitted)). Accordingly, the Court declines to expand the reach of *Bivens*.

In her Revised Complaint, Plaintiff states that she is suing Defendants in their individual capacities. (Revised Compl. at 1.) Though Plaintiff brings a Fourth Amendment claim and a Fifth Amendment claim, these claims fail because they are not adequately pled, as discussed below. All of Plaintiff's other claims fall outside the scope of *Bivens*. Thus, Plaintiff is unable to recover under *Bivens*.

Plaintiff also asks for a variety of equitable relief. Much of this requested relief centers around the Court declaring her rights, declaring what her true name is, and

ordering Defendants to admit mistake and apologize to her. (*See id.* ¶¶ 37–55.)
Regardless of whether Plaintiff is suing Defendants in their individual or official
capacities, her requests for equitable relief fail because she does not adequately allege
any causes of action upon which her equitable relief could be granted.

Plaintiff alleges in the section of her Revised Complaint titled "First Amendment
Violations" that she was "denied her rights under God to civil due process by impeding
her right to free speech and to freely practice her religious beliefs." (Revised Compl.
¶ 16.) This is merely a conclusory statement of a First Amendment violation. Plaintiff's
Revised Complaint does not allege any facts which demonstrate that Defendants impeded
her First Amendment rights. Thus, Plaintiff does not state a claim for relief under the
First Amendment.

Plaintiff's Revised Complaint is similarly deficient with respect to the alleged
Fourth Amendment violations. The Revised Complaint does not allege any facts
establishing that Defendants engaged in any search or seizure of Plaintiff's person,
houses, papers, or effects. The section of the Revised Complaint titled "Fourth
Amendment Violations" alleges that "[a] target letter full of collusion . . . was sent to
[Plaintiff]" and that Plaintiff was "assigned an incompetent [a]ttorney." (*Id.* ¶¶ 19–20.)
Neither of these facts amount to a violation of Plaintiff's Fourth Amendment rights.

In the section of Plaintiff's Revised Complaint titled "Fifth Amendment
Violations," Plaintiff alleges that she has "been denied her unalienable right to Civil Due
Process with the violation of her right to remain secure in her person and being deprived
of life, liberty[,] and[/]or her property." (*Id.* ¶ 21.) Later in that section, Plaintiff alleges

that "Defendants in their individual capacity attempted to take private property from the Plaintiff to use for public use, without just compensation." (*Id.* ¶ 22.) Both allegations are mere recitations of the elements of a Fifth Amendment claim. *See* U.S. Const. amend. V. The Revised Complaint does not provide any facts regarding what Defendants took or what they attempted to take.

Likewise, the Fifth Amendment section of the Revised Complaint does not allege any facts detailing how Plaintiff's Fifth Amendment due process right was violated. (*See id.* ¶¶ 21–22.) However, elsewhere in the Revised Complaint, Plaintiff states that the target letter she received did not provide adequate details to inform Plaintiff of the "nature or the cause that led to the alleged preindictment of [] Plaintiff." (*Id.* ¶ 23.) This implies that the target letter violated her Fifth Amendment right to due process because it was insufficiently detailed. However, there is no Fifth Amendment right to receive a target letter. *See United States v. Washington*, 431 U.S. 181, 189 (1977). Consequently, there is no Fifth Amendment right to receive a target letter with any particular level of detail. *Barbieri v. United States*, No. 16-3748, 2017 WL 4310255, at *7 (E.D. Pa. Sept. 28, 2017). Thus, Plaintiff fails to state a claim upon which relief can be granted for a Fifth Amendment violation.

The exact nature of Plaintiff's Sixth Amendment claim is unclear. (*See id.* ¶¶ 23–32.) The Sixth Amendment provides a right to speedy trial and counsel in criminal proceedings. U.S. Const. amend. VI. Here, Plaintiff presents several legal theories pertaining to the use of capital letters, Roman civil law, "the doctrine of agent-principal," "the doctrine of *parens patriae*," suretyship, equity, and restriction of commerce.

(Revised Compl. ¶¶ 23–32.)  However, Plaintiff does not explain how these legal theories relate to any Sixth Amendment violation.  Plaintiff does state that her "[a]ssigned attorney was trying to push the plea agreement and not advising [] [P]laintiff of her rights."  (Revised Compl. ¶ 32.)  The Court reads this to implicate the Sixth Amendment right to counsel.

As a preliminary matter, the Sixth Amendment right to counsel attaches only at the initiation of adversary judicial criminal proceedings and only then at "critical" pre-trial proceedings.  *See United States v. Gouveia*, 467 U.S. 180, 188–89 (1984).  While the Fourth Circuit has not opined on the specific question of whether plea negotiations constitute critical adversary judicial criminal proceedings, it has held that the right to counsel generally attaches when a criminal defendant is formally charged.  *United States v. Ayala*, 601 F.3d 256, 272 (4th Cir. 2010) (holding that the right to counsel had not yet attached when a criminal defendant testified before a grand jury, knowing he was being investigated).  Here, Plaintiff had not been formally charged at the time of her filing, so her Sixth Amendment right to counsel had not yet attached.

Further, the target letter informed Plaintiff of her right to counsel, and Plaintiff obtained counsel.  (Attach. 1 at 1; Revised Compl. ¶ 5.)  Though the Sixth Amendment right to counsel provides a right to "reasonably effective" assistance, the Revised Complaint asserts no facts explaining how Defendants are responsible for any lack of reasonably effective representation.  *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  This is especially true because Plaintiff herself asked the Court to dismiss her counsel.  Plaintiff's dissatisfaction with the quality of her representation does not provide

a cause of action under the Sixth Amendment against Defendants. Thus, Plaintiff's Sixth Amendment claim fails to state a claim upon which relief may be granted.

The Revised Complaint also does not assert any facts that could plausibly be construed to constitute a Seventh Amendment violation. The Seventh Amendment provides a right to a jury trial for civil cases at common law. U.S. Const. amend. VII. The controversy here centers around a criminal action, not a civil case. (*See* Attach. 1 at 1.) Thus, the Seventh Amendment is inapplicable to this case.

Similarly, although the Revised Complaint contains a section titled "Tenth Amendment Violation," the Revised Complaint does not allege any facts that could plausibly be construed as a Tenth Amendment violation. (Revised Compl. ¶¶ 35–36.) The Tenth Amendment pertains to the distribution of power between the federal government and the states. U.S. Const. amend. X. Individuals injured by government action have standing to bring suit under the Tenth Amendment if that governmental action exceeded the bounds of federalism. *Bond v. United States*, 564 U.S. 211, 221–24 (2011). However, the Revised Complaint does not sufficiently describe how Defendants violated the precepts of federalism. Plaintiff alleges that Defendants "failed to peacefully and equitably resolve the matter," apparently referring to her plea negotiations. (*Id.* ¶ 35.) Plaintiff further accuses Defendants of "collusion to deprive [] Plaintiff of her God given rights by claiming to have first-hand knowledge of the alleged events that were listed in the target letter." (*Id.* ¶ 36.) Neither of these allegations constitute a Tenth Amendment violation. *See* U.S. Const. amend. X. Thus, Plaintiff fails to adequately plead a Tenth Amendment violation.

Finally, Plaintiff fails to state a plausible claim for relief under the *de facto* officer doctrine. "The *de facto* officer doctrine confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 180 (1995). While Defendants are the types of officers to whom the *de facto* officer doctrine could conceivably apply, Plaintiff does not allege any facts indicating that any person acted under the color of official title even though their appointment or election to office was deficient. Furthermore, the *de facto* officer doctrine holds that, even if their appointments were deficient, Defendants' actions performed under the color of official title—here, sending the target letter and engaging in plea negotiations—would nevertheless be valid. *See id.*; *see also Satterthwaite v. Kijakazi*, No. 3:20-cv-724-MOC, 2022 WL 468946, at *7 (W.D.N.C. Feb 15, 2022). Accordingly, Plaintiff's claims under the *de facto* officer doctrine fail.

## IV. CONCLUSION

For these reasons, Plaintiff's Revised Complaint (ECF No. 7) will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(b)(6). An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: Sept. 4, 2024
Richmond, Virginia

11